UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-80412-CIV-HURLEY

**ROBERTA ANN WALACH,**
    **Plaintiff,**
**vs.**
**ERICK SHINESKI, as SECRETARY OF**
**VETERAN AFFAIRS,**
    **Defendant.**
_____/

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**& DENYING PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Roberta Ann Walach, a Caucasian female, alleges that her employer, the Department of Veterans Affairs ("VA")[1] violated Title VII by discriminating against her based on race. The defendant has moved for summary judgment, contending, first, that plaintiff is unable to establish a *prima facie* case of discrimination due to insufficient evidence of disparate treatment of a similarly situated employee outside her race. Alternatively, defendant argues that it has offered a legitimate, non-discriminatory reason for the challenged employment action which plaintiff does not rebut with evidence of pretext. Plaintiff has cross-moved for summary judgment on the issue of liability.

**I. Background** [2]

Walach is employed as a staff operating room ("OR") nurse at the Veterans Administration Hospital ("the hospital") located in West Palm Beach, Florida. On October 2, 2009, Walach was

---

[1] The named defendant is Erick Shineski, Secretary of Veterans Affairs. For ease of reference the defendant shall be referred to in this order as the "VA," or "the hospital."

[2] The facts recited are undisputed by the parties unless otherwise noted, and are derived mainly from the following materials: (1) Deposition of Roberta Walach; (2) Affidavits of Helen Glinski, Bonnie Richter; Katherine Schreiber; Bonnie Carter (3) Local Rule 7.5 Statements of material undisputed facts and counter-statements of undisputed facts.

injured in an off-duty motorcycle accident causing fractures to her left clavicle, scapula and ribs. Her doctor released her to light duty work with lifting restrictions on December 16, 2009. On that date, Wallach presented the physician's release to her immediate supervisor, Helen Glinski ("Glinski"), also a Caucasian female. After consulting with her superior, Bonnie Richter, Glinski returned and told Wallach that there were no light duty positions available for OR nurses with non-work related injuries at that time.

On the following day, Walach's request was formally submitted to the hospital's five-member "light duty review board," consisting of a physician, safety officer, employee union representative and two nurses, Olivia Freda and Katherine Schreiber. Although Glinski was generally supportive of Walach's request, the board denied it citing a then existing backlog of requests for light duty assignments from nurses injured on the job and a company policy giving preference to such applicants. Consequently, Ms. Wallach remained on leave without pay until she was able to resume her post without restrictions on March 8, 2010.

In August, 2010, Walach learned that another OR staff nurse, Debra Shannon, an African-American, had been hospitalized for a heart condition while out on vacation, and upon return to work was placed in a "float" position, essentially operating as a back-up for other OR staff nurses during scheduled breaks. Walach contends that she frequently observed Shannon resting in the lounge wrapped in blankets following that assignment, and that other employees complained about her work lapses without any disciplinary repercussion from supervisor Helen Glinski. Shona Pryce, the "flow coordinator" responsible for OR staff scheduling, testified that other OR nurses also complained about Shannon walking out of the OR room during surgical procedures ( a terminable offense) on two separate occasions during this time, and that Shannon was allowed to remain on the job despite report of these derelictions to Glinski.

According to Glinski, Shannon delivered a doctor's note dated August 26, 2010 which released her back to work without restriction on August 30, 2010, and that Shannon never formally requested or received a light duty work assignment. Glinski explains that as nurse manager, she had discretion to instruct the flow coordinator to assign a nurse who was not feeling well, such as Shannon, to a "float" position, which is generally considered to be a less stressful position in the OR but is not formally designated as a light duty position. Glinski acknowledges that she directed such an assignment for Shannon, and does not recall receiving any complaints about Shannon's performance in that capacity during her limited period of incapacitation.

After learning of the accommodation made for Shannon, Wallach presented a charge of discrimination, pursuant to defendant's internal procedures, contending that was treated in an unfair and racially discriminatory manner because a similarly situated African-American employee was granted a light duty work assignment despite similar incapacities, where Walach was denied such a request. Walach filed this lawsuit after the Department of Veterans Affairs ultimately dismissed her complaint and issued a notice of right to sue.

Beyond the proffered comparator evidence, the only other circumstantial evidence of bias on the part of hospital management personnel derives from the affidavit testimony of Bonnie Carter dated January 27, 2012. In this affidavit, Carter offers to correct her prior deposition testimony of December 20, 2011, in which she disclaimed any knowledge of derogatory racial statements made by Glinski. In her current affidavit, she now recalls a prior conversation with Helen Glinski involving another African-American OR employee, Wilbert Evans. Carter alleges that she complained to Glinski about reports of poor work performance jeopardizing patient safety, but that Carter dismissed the complaints saying she knew Evans was unsafe but "there was really nothing she could do because he had 'three cards in his favor." Glinski then allegedly elaborated by saying,

3

"Number one: he is a veteran and number two....," at which point she allegedly touched the back of her hand with her fingers rubbing it back and forth. Carter interpreted this as a reference to the color of Mr. Evans skin and a race-based preferential treatment.

In response to allegations of bias charged to Glinski, the defendant counters that Glinski did not have ultimate decision making authority over the challenged employment decision. Initially, defendant shows that Glinski simply relayed the denial of Walach's light duty work request made by Bonnie Richter, Glinski's own supervisor, when she verbally reported back to Walach that there were no light duty positions available for her in OR in December 2009.

Subsequently, defendant shows that Glinski was not a participant in the hospital's light duty review board which formally considered and denied Walach's request. It further shows that Glinski was generally supportive of Walach's request before the board and expressed a willingness to find clerical work for Walach should the board allow the requested assignment. There is no competing record evidence suggesting that Glinski in fact participated in the decision to deny Walach's light duty work request, or that she otherwise exercised any negative influence over the decision makers who did participate in that process.

### III. Discussion

### A. Standard

A case of race discrimination under Title VII based on purely circumstantial evidence is governed by the familiar burden shifting framework outlined by the Supreme Court in *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) and *Texas Dept of Community Affairs v. Burdine*, 450 U.S. 248, 252-56, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). Under *McDonnell-Douglas* and its progeny, to establish a *prima facie* case of unlawful race discrimination the plaintiff must show that (1) she is a member of a protected class; (2) she was

4

subjected to an adverse employment action; (3) she was treated less favorably than similarly situated employees outside her race, and (4) she was qualified to do the job. *See Maynard v. Bd of Regents* 342 F.3d 1281 (11th Cir. 2003). See also *Holifield v Reno,* 115 F.3d 1555, 1562 (11th Cir. 1997). To establish that a defendant treated similarly situated employees more favorably, plaintiff must show that her comparators are "similarly situated in all relevant respects." *Id*. In evaluating the "similarly situated" component in cases involving allegedly discriminatory discipline or preferential treatment, the "quantity and quality" of the comparator's circumstances must be "nearly identical" to those of the plaintiff. *Peppers v Traditions Golf Club*, 2012 WL 443336 (11th Cir. Feb. 13, 2012); *Lee v U.S. Steel Corp*., 2012 WL 11008 (11th Cir. Jan. 4, 2012). *Perry v State of New York Dept. Of Labor, No. 8,* 2009 WL 2575713 (S.D.N.Y. 2009), *aff'd* 398 Fed. Appx. 628 (2d Cir. 2010)(applying paradigm to disparate preferential treatment). If plaintiff establishes these elements of her *prima facie* case, she raises a presumption that her race motivated her employer to treat her less favorably.[3]

Once plaintiff establishes a *prima facie* case, the burden shifts to the employer to rebut the presumption of unlawful race motivation by producing evidence the employer's action was taken for some legitimate, nondiscriminatory reason. *E.E.O.C. v. Joe's Stone Crabs, Inc*., 296 F.3d 1265 (11th

---

[3] Where, as here, plaintiff is a member of a majority group (i.e. a reverse discrimination claimant), some circuits require plaintiff to prove "background circumstances to support the suspicion that the defendant is that unusual employer who discriminates against the majority." See *e.g. Arendale v. City of Memphis*, 513 F.3d 587 (6th Cir. 2008)*; Parker v. Balt. & Ohio R.R., Co.*, 652 F.2d 1012, 1017 (D. C. Cir. 1981). However, the Eleventh Circuit has rejected this approach, holding that "[d]iscrimination is discrimination, no matter what the race, color, religion, sex, or national origin of the victim"), *Smith v. Lockheed Martin Corp*., 644. F.3d 1321 (11th Cir. 2011), citing *Bass v. Bd of County Commissioners,* 256 F.3d 1095 (11th Cir. 2001), overruled in part on other grounds, *Crawford v Carroll*, 529 F.3d 961 (11th Cir. 2008). Thus, in this Circuit, reverse discrimination claims are analyzed the same under the same paradigm as any race discrimination claim. *Santillana v Fla State Court System*, 2012 WL 11013 (Jan 4, 2012).

Cir. 2002). If the employer meets this burden of production, then the presumption of discrimination raised by the plaintiff's *prima facie* case disappears, and the inquiry proceeds to a "new level of specificity," where plaintiff must show that the employer's proffered reason is a pretext for unlawful discrimination. *Smith v. Lockheed Martin Corp.,* 644 F.3d 1321, 1326 (11th Cir. 2011). At this stage, the plaintiff's burden "merges with the ultimate burden of persuading the court that the plaintiff has been the victim of intentional discrimination." *Id.* To withstand summary judgment at this juncture, plaintiff must adduce evidence from which a jury could reasonably infer that the employer's proffered justification was pretextual.

**B. Comparator Evidence**

The hospital argues that Walach cannot benefit from the *McDonnell-Douglas* presumption of discrimination because plaintiff does not satisfy the third element of a *prima facie* case, i.e. that she was treated less favorably than a similarly situated employee outside her race. The hospital argues Shannon is not an adequate comparator "nearly identical" in all relevant respects to Walach because Shannon was released to work without restrictions when she returned to her post on August 30, 2010, while Walach was released to 'light duty' work with lifting restrictions when she returned to her post on December 16, 2009; Shannon was assigned a "float" position in the OR which required full mental and physical capacities, while Walach was not a candidate for such a position due to lifting restrictions with her left harm; Shannon's period of temporary incapacitation, warranting the "float" position, lasted only ten days, while Walach's period of incapacitation lasted three months; Shannon did not request a light duty work assignment, while Walach did request a light duty assignment, and Walach happened to make her request at a time of a significant backlog of priority requests from nurses incapacitated by on-the-job injuries.

Walach counters that her comparator is similarly situated in all relevant respects, despite the

6

variances in their formal work restrictions, because Shannon – despite medical clearance – was apparently unable or unwilling to perform the full duties required of an OR "float" nurse, yet was allowed to remain in that position drawing a full pay during the period of her incapacitation, despite commission of terminable offenses and complaints made by other OR nurses about her derelictions which were well known to Glinski.

The court agrees that the there are no functionally significant variations between the plaintiff and her alleged comparator which defeat this element of plaintiff's *prima facie* case. If, as the evidence suggests, Shannon was assigned to a "lighter" duty work assignment to accommodate a weakened physical or mental condition without submitting a formal "light duty" assignment, and was allowed to keep that position despite an apparent inability to discharge the duties of that post, she is functionally a person outside of plaintiff's race that was granted, albeit informally, a functionally equivalent working accommodation as that requested by and denied to Walach. That Shannon did not formally request such an assignment, but was informally accommodated, is not a meaningful distinction which defeats her stats as an appropriate comparator.

Had the record revealed that Shannon fully performed the duties of an OR "float" nurse during the time of her incapacitation, she would not serve as an adequate comparator because the undisputed evidence is that Walach was not capable of the full physical performance needed to qualify for such post when she requested light duty, and the variances in their treatment would be logically tied to material distinctions in their physical capabilities. However, there is sufficient evidence in the record to raise a question as to whether Shannon similarly should have rejected as a "float" candidate, in light of an apparent inability or unwillingness to assume the full duties of that position, so that she, like Walach, was functionally a person incapable of performing the full job duties of an OR staff nurse at the time of her accommodation.

Because a jury might reasonably infer that these two employees suffered functionally comparable incapacities derived from off-duty injuries, with plaintiff receiving a far less favorable accommodation, the court finds that Walach has successfully identified Shannon as a comparator who received preferential treatment, at least for purposes of summary judgment. *See Mulhall v Advance Security Inc.,* 19 F.3d 586 (11th Cir. 1994); *Eggleston v Bieluch*, 203 Fed. Appx. 257 (11th Cir. 2006)(whether individuals are similarly situated is generally a factual issue for the jury).

### C. Proffered Business Justification

Under the familiar *McDonnell-Douglas* three-part burden-shifting scheme, the burden of production now shifts to the hospital to rebut the inference of discrimination thus created by offering a non-discriminatory reason for its actions. In this case, the hospital points to undisputed evidence of a hospital policy giving preference to nurses suffering on the job injuries in accommodating light duty work requests, and the existence of a backlog of such priority cases at the time Walach submitted her request. The court finds that the claimed application of this policy was a legitimate, nondiscriminatory reason for denying Walach a light duty work assignment. This explanation meets Walach's *prima facie* case by presenting a non-discriminatory reason for the hospital's actions, and also "frames the factual issue with sufficient clarity" to allow plaintiff a full and fair opportunity to demonstrate pretext. *Burdine,* 450 U.S. at 255-56, 101 S. Ct. at 1095.

Thus, the burden shifts to plaintiff to demonstrate the reason offered by defendant was in fact only a pretext for impermissible discrimination. To discharge this burden, plaintiff must show that the proffered reason was not the true reason for the employment decision, either by direct evidence showing that a discriminatory reason actually motivated the defendant, or indirect evidence suggesting that the defendant's explanation is unworthy of credence. *Burdine*, 450 US at 256; *Combs v. Plantation Patterns*, 106 F.3d 1519 (11th Cir. 1997).

Here, Walach offers no evidence tending to suggest that the proffered reason was a mere pretext for discrimination. She offers no direct evidence that the hospital's true motivation for accommodating Shannon was to favor African-American employees or to discriminate against Walach or members of any particular race.[4] She offers no direct evidence which disputes the existence of the light duty work assignment policy or claimed backlog of light duty requests from priority applicants, and no indirect evidence tending to show the implausibility or incredibility of the defendant's proffered justification.

As plaintiff offers no evidence tending to undermine the defendant's assertion that it acted on a race-neutral policy favoring on- the- job injured applicants when it denied plaintiff's request for a light duty work assignment, she identifies no genuine issue of material fact on the pretext issue. Because Walach fails to make a sufficient showing on this essential element for which she has the burden of proof at trial, summary judgment is appropriately entered in favor of the defendant. *See McCloud v Potter*, 257 Fed. Appx. 185 (11th Cir. 2007)(unpub)(employer's reason for denying African-American employee's light duty request, to wit, company policy of denying light duty to employees with lifting limit of 20 pounds or less, was legitimate, nondiscriminatory justification for action); *Melton v National Dairy LLC*, 705 F. Supp.2d 1303 (M. D. Ala. 2010)(finding no pretext behind employer's legitimate, non-discriminatory reason for denying request for light duty

---

[4] The only circumstantial evidence of bias (outside the evidence of disparate preferential treatment between Shannon and Walach) proffered by plaintiff is the episode attributed to Glinski where she allegedly rubbed the back of her hand with her fingers in explanation for the retention of an African-American OR employee. Liberally construed, this suffices as some evidence of preferential race bias on the part of Glinski, but it cannot serve as relevant circumstantial evidence of pretext because the undisputed evidence establishes that Glinski was not a member and did not participate in the light duty review board which acted as the final decision maker on Walach's light duty work assignment request.

assignment by African- American employees who was injured in motorcycle accident, i.e that injury had not occurred on the job and employee had been employed less than one year). *See also Tysinger v. Police Dept of City of Zanesville*, 463 F.3d 569 (6th Cir. 2006)(finding legitimate, nondiscriminatory reason for refusing restricted duty assignment to pregnant police officer); *Kondrak v. Principi*, 161 Fed. Appx. 817 (11th Cir. 2005)(white male employee failed to meet "head on" legitimate, nondiscriminatory reason offered by Department of Veterans Affairs for non-selection to newly created position).

### III. Conclusion

Based on the foregoing, it is **ORDERED AND ADJUDGED**:

1. The defendant's motion for summary judgment [DE# 13] is **GRANTED.**

2. The plaintiff's cross motion for summary judgment [DE# 24] is **DENIED**.

3. Pursuant to Fed. R. Civ. P. 58 final summary judgment in favor of defendant shall enter by separate order of the court.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida this 28th day of February, 2012.

_____
Daniel T. K. Hurley
United States District Judge

cc.  All counsel